## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THE MUSCOGEE (CREEK)** | ) | |
| **NATION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-CV-261-RAW-GLJ** |
| | ) | |
| **OPTUMRX, INC.; OPTUM, INC.;** | ) | |
| **OPTUM RX HOLDINGS, LLC;** | ) | |
| **UNITED HEALTHCARE** | ) | |
| **SERVICES INC.; and** | ) | |
| **UNITEDHEALTH GROUP, INC.,** | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is UnitedHealth/Optum Defendants' Motion to Stay Proceedings Pending Arbitration Pursuant to Section 3 of the Federal Arbitration Act [Docket No. 34]. Plaintiff brought this action for claims arising under 25 U.S.C. § 1621e (the "Recovery Act") [Docket No. 2]. On August 30, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636(b) [Docket No. 11]. Defendants, OptumRX, Inc., Optum Inc., OptumRX Holdings, LLC, United HealthCare Services, Inc., and UnitedHealth Group Inc., now seek an order to stay the claims asserted by Plaintiff pending arbitration. For the reasons stated below, the undersigned Magistrate Judge recommends that the Motion to Stay be GRANTED. [1]

---

[1] District courts have reached different conclusions regarding whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636. *Compare Wilken Partners, L.P.*

## BACKGROUND

Plaintiff Muscogee Creek Nation is a federally recognized and sovereign Native American tribe. Pursuant to federal law, Plaintiff provides free healthcare services to its members; however, it may recoup the cost of covered services from its members' applicable insurance coverage pursuant to the Recovery Act. 25 U.S.C. § 1621e; Docket No. 2, p. 3. To that end, Plaintiff and its pharmacies entered into agreements with OptumRx that were executed through a contracting agent, Pharmacy Services Administrative Organization ("PSAO"). Docket Nos. 55-5, 56-1, 56-3, 56-3, 56-4, 56-5, 56-6, & 56-7. Plaintiff's agreement with OptumRx includes two key documents: the Pharmacy Network Agreement ("PNA") and the Provider Manual.[2] Docket No. 34-1. Together, these documents govern the relationship between Plaintiff's pharmacies and Defendants.[3] PNA §§ 10.1 and 10.3 are pertinent here. PNA § 10.1 requires the parties to work in good faith to resolve "any and all issues and/or disputes . . . including, but not limited to all questions of arbitrability, the existence validity, scope, interpretation, or termination of the agreement[.]" Docket No. 55-5, p. 19. Section 10.3 then provides "if the party asserting the

---

*Champps Operating Corp.*, 2011 WL 1257480, at *1 (D. Kan. Apr. 4, 2011) ("District courts that have considered the nature of an order to stay proceedings pending arbitration and to compel arbitration have concluded that these are non-dispositive orders"), *with Coxcom, Inc. v. Egghead Telecom, Inc.*, 2009 WL 4016629, at *1 (N.D. Okla. 2009 ("Courts generally regard a motion to compel arbitration either as a case dispositive matter or a matter not within the statutory authority of a U.S. Magistrate Judge to resolve by Order."). Accordingly, out of an abundance of caution, the undersigned Magistrate Judge issues a Report and Recommendation.

[2] The PNA § 3.15 incorporates the Provider Manual by reference. Docket No. 55-5, pp. 11-12.

[3] Defendants, Optum, Inc., Optum RX Holdings, LLC, United Healthcare Services Inc, and UnitedHealth Group, Inc., are non-signatories to the PNA. Docket No. 26-5. Plaintiff does not contest Defendants assertion that these non-signatory Defendants are covered by the arbitration provision and delegation clause.

Dispute has satisfied the requirements of 10.3 hereof, it shall thereafter be submitted to binding arbitration . . . in accordance with Commercial Dispute Procedures of the American Arbitration Association[.]" Docket No. 55-5, pp. 18-19. Similarly, the Provider Manual contains a section requiring the parties to work in good faith to resolve all disputes, but also provides: "[f]or avoidance of doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or interpretation of the parties' agreement to arbitrate." Docket No. 34-1, pp. 126-27.

Plaintiff alleges in this case that, since approximately 2015, Defendants have routinely denied its pharmacies' reimbursement claims in violation of the Recovery Act. Docket No. 2, pp. 4-5. Defendants ask the Court to stay the case in light of the arbitration provision contained in the PNA and Provider Manual. Docket No. 34.

## ANALYSIS

Arbitration agreements such as the one at issue in this case are governed by the Federal Arbitration Act ("FAA"). Under the FAA "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[C]ourts must 'place . . . arbitration agreements on an equal footing with other contracts, and . . . enforce them according to their terms.'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The FAA further provides that "upon being satisfied that the making of the agreement for arbitration

is not in issue" the Court "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4.[4]

"In general, courts may resolve challenges directed specifically to the validity of the arbitration provision itself." *Caremark, LLC v. Chickasaw Nation* (*Chickasaw I*), 43 F.4th 1021, 1029 (9th Cir. 2022) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)). However, "[t]he FAA 'allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.'" *Chickasaw Nation v. Caremark PHC, LLC* (*Chickasaw II*), 2022 WL 4624694, at *2 (E.D. Okla. Sept. 30, 2022) (quoting *Henry Schein, inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 527 (2019)). In these instances, "a more rigorous standard applies[.] . . . 'Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Rent-A-Center, W. Inc.*, 561 U.S. at 79 (Stevens, J., dissenting) (quoting *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Ultimately, "a court must [first] resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must resolve

---

[4] Section 4 of the FAA also provides "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "In applying this language [of the FAA], district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Here, neither party has requested a summary trial, and no material disputes of fact exist as it pertains to the existence of or making of an arbitration agreement. As such, the undersigned resolves this issue on the pleadings. *Bellman v. I3Carbon, LLC*, 563 F. App'x 608, 612 (10th Cir. 2014) ("Only 'when it's clear no material disputes of fact exist and only legal questions remain' may a court resolve the arbitration question by ruling on a motion to compel, rather than conducting a summary trial.").

any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability." *Chickasaw I*, 43 F.4th at 1030. Here, Plaintiff does not argue that an agreement to arbitrate was never formed but challenges the enforceability of the arbitration agreement. Indeed, Plaintiff recognizes that it acted under Defendants' Provider Agreements, which includes the arbitration provision and clause delegating the issue of arbitrability to the arbitrator. Docket No. 2, p. 14.

## I.    DELEGATION CLAUSE

As an initial matter, it must be determined whether the Court or the arbitrator should decide the arbitrability of Plaintiff's claims. Plaintiff contends there is no clear evidence that the arbitration provisions at issue clearly delegated the issue of arbitrability to the arbitrator. Docket No. 43, p. 17. The undersigned Magistrate Judge disagrees.

In support of its argument, Plaintiff relies on *OptumRx, Inc. v. A&S Drugs LLC*, 2023 WL 6170802 (C.D. Cal. Sept. 20, 2023) in which the Central District Court of California analyzed the 2022 OptumRx Provider Manual and concluded it did not clearly and unmistakably delegate the issue of arbitrability to the American Arbitration Association. *A&S Drugs LLC*, 2023 WL 61708802, at *4. The Provider Manual in the present case, however, is different from the provider manual at issue in *A&S Drugs LLC*. The Provider Manual at issue in the present case is the OptumRx Pharmacy Provider Manual 2023 Second Edition Version 2.1, which contains different provisions from the 2022 Provider Manual and explicitly provides, "[f]or avoidance of any doubt, the arbitrator(s) shall decide any and all questions regarding arbitrability or the formation, scope, validity, and/or

interpretation of the parties' agreement to arbitrate." Docket No. 34-1, p. 134. Moreover, in a similar action brought by the Chickasaw Nation, this Court found that the language in PNA § 10.1 clearly and unmistakable delegated the issue of arbitrability to the arbitrator. *Chickasaw II*, 2022 WL 4624694, at *3. Likewise, the undersigned Magistrate Judge finds that the language in the 2023 Provider Manual, in conjunction with the language in PNA §§ 10.1 and 10.3, establishes clear and unmistakable evidence that the parties agreed to submit the question of arbitrability to the arbitrator. *Kaplan*, 514 U.S. at 939. Thus, in this case, "[t]he arbitrator must decide whether the claims in this case are subject to arbitration, not this Court." *Caremark, LLC v. Chickasaw Nation*, 2021 WL 2780859, at *3 (D. Ariz. July 2, 2021), *aff'd* 43 F.4th 1021 (9th Cir. 2022).

Plaintiff nevertheless maintains that the arbitration provision is unenforceable because (i) Plaintiff, as a sovereign nation, did not waive its sovereign immunity, (ii) the arbitration provision as a whole is unconscionable, and (iii) the Recovery Act displaces any agreement to arbitrate. The Defendants contend these challenges must be resolved by the arbitrator. The undersigned Magistrate Judge agrees with Defendants.

## II.    SOVEREIGN IMMUNITY

First, Plaintiff asserts arbitration is improper because it did not clearly and unequivocally agree to waive its sovereign immunity and, as such, could not have agreed to arbitrate its claims. Docket No. 43, pp. 25-29. The Ninth Circuit previously rejected this argument, noting:

> As *Ute Indian Tribe* illustrates, the Nation's assumption that a tribe's entering an arbitration agreement will necessarily waive tribal immunity is unfounded—a tribal organization might agree to arbitrate any disputes for which it has waived sovereign immunity but still reserve its ability to choose whether to waive immunity in any given case. The Nation's proposed approach here would put the cart before the horse, requiring us to resolve

whether there has been a waiver of tribal immunity for particular claims for which arbitration is sought before determining whether an arbitration agreement exists at all.

*Chickasaw I*, 43 F.4th at 1032-33 ("The Tenth Circuits decision in *Ute Indian Tribe* helpfully explains how a forum-selection clause—which, like an arbitration provision, is an agreement to bring disputes to a particular forum—does not necessarily waive sovereign immunity; rather, the forum-selection clause may simply designate a forum for resolving disputes for which immunity *is* waived."). Likewise, relying on the Ninth Circuit's decision, this Court previously rejected Plaintiff's argument and noted "[t]he parties' arbitration agreement may or may not have implications for the Nation's sovereign immunity, but the Court need not resolve those implications before deciding whether there is a valid arbitration agreement and delegation clause." *Chickasaw II*, 2022 WL 4624694, at *5. As such, the undersigned Magistrate Judge also "reject[s] the Nation's argument that, because it did not clearly and unequivocally waive its tribal immunity, it cannot have agreed to the arbitration provisions (or the delegation clauses)." *Chickasaw* I, 43 F.4th at 1033.

## III.    UNCONSCIONABILITY

Second, Plaintiff asserts that the arbitration provision is substantively and procedurally unconscionable which "invalidate[s] the arbitration clause as a whole." Docket No. 43, p. 16. Defendants contend that, because Plaintiff's unconscionability argument is challenging the arbitration agreement as a whole rather than the delegation provision specifically, the arbitrator must determine whether the arbitration agreement is unconscionable. Docket No. 49, pp. 3-4. The Supreme Court addressed this precise issue in 2010, concluding the

delegation provision must be "treat[ed] . . . as valid under § 2 [of the FAA], and [the court] must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. Here, Plaintiff likewise challenges the arbitration provision as a whole arguing that it is procedurally and substantively unconscionable, which is a determination for the arbitrator and not this Court. *Rent-A-Center*, 561 U.S. at 68-69. The undersigned Magistrate Judge therefore finds that Plaintiff's challenge to the validity of the Agreement as a whole shall be resolved by the arbitrator.[5]

## IV.    THE RECOVERY ACT

Third, Plaintiff asserts that the arbitration provision is unenforceable because the Recovery Act states "[n]o law of any State, or of any political subdivision of a State and no provision of any contract, . . . shall prevent or hinder the right of recovery of . . . an Indian tribal, or tribal organization[.]" 25 U.S.C. § 1621e(c). Plaintiff does make a passing challenge to the delegation clause by contending, "[i]n this case, the roadblocks placed by arbitration and the delegation clause meet both the 'prevent or hinder' and the 'effective vindication' standards, so that the Recovery Act precludes arbitration and the delegation of any threshold issues to arbitration.'" Docket No. 43, p. 31. However, Plaintiff does not set forth any argument illustrating how the delegation clause prevents or hinders its recovery under the Recovery Act nor does the Nation explain how the delegation clause

---

[5] Because additional discovery would not change the fact that Plaintiff did not challenge the delegation provision specifically, Plaintiff's request for leave to conduct discovery "on the elements of the legal tests and standards for unconscionability" is denied.

would prevent the effective vindication of the Recovery Act. *See* Docket No. 44, pp. 29-31. Thus, Defendants assert that Plaintiff has not sufficiently challenged the delegation provision, and the undersigned Magistrate Judge agrees.

The Tenth Circuit has not determined whether such a cursory challenge to the delegation clause would be sufficient to invoke the Court's review, and other Circuits that have reviewed this issue reach varying conclusions. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1011 (9th Cir. 2023) ("the party resisting arbitration must specifically reference the delegation provision *and* make arguments challenging it. . . . [A] party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party *articulates* why the argument invalidates each specific provision.") (emphasis added); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1304 (11th Cir. 2022) ("Challenging a delegation agreement is a matter of substance, not form. A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues."); *In re StockX Customer Data Security Breach Litigation*, 19 F.4th 873, 885-86 (6th Cir. 2021) ("[P]laintiffs were required to show that '*the basis of [their] challenge [is] directed specifically*' to the 'delegation provision.' They have failed to do so as they have simply recycled the same arguments that pertain to the enforceability of the agreement as a whole.") (emphasis in original); *MacDonald v. CashCall, Inc.* 883 F.3d 220, 227 (3rd Cir. 2018) ("MacDonald specifically challenged the delegation clause. . . . [H]is brief opposing Defendants' motion to compel arbitration states that 'the delegation clause suffers from the same defects as the

arbitration provision,' and includes a section discussing this challenge.") (internal quotations omitted). *But see Gingras v. Think Finance, Inc.* 922 F.3d 112, 126 (2nd Cir. 2019) ("Plaintiffs mount a convincing challenge to the arbitration clause itself. Their complaint alleges that the delegation provision of the Purported Arbitration Agreement is also fraudulent. That specific attack on the delegation provision is sufficient to make the issue of arbitrability one for a federal court.") (internal quotations omitted); *Gibbs v. Sequoia Cap. Operations, LLC*, 866 F.3d 287, 291 (4th Cir. 2020) (concluding a statement "that the delegation clause was unenforceable because of the prospective waiver doctrine" was sufficient to permit review.).

The undersigned Magistrate Judge finds persuasive those decisions that require something more than "merely say[ing] the words, 'I am challenging the delegation agreement.'" *Attix*, 35 F.4th at 1304. By only superficially challenging the delegation clause and failing to explain how the delegation provision prevented or hindered Plaintiff's right of recovery, Plaintiff fails to challenge the delegation clause specifically and remains obligated to arbitrate the issue of arbitrability. *See Rent-A-Center*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court.") (emphasis in original).

Even under the less stringent standard, however, the undersigned Magistrate Judge finds Plaintiff's argument unavailing because the Recovery Act does not displace the FAA. Plaintiff challenges the delegation clause and arbitration provision on the basis that the Recovery Act provides "no provision of any contract . . . shall prevent or hinder the right

of recovery of . . . an Indian tribe[.]" 25 U.S.C. § 1621e. This argument implicates the FAA, which generally requires arbitration agreements to be enforced according to their terms unless "such grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C. § 9. This "is the case even when federal statutory claims are at issue, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citing *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). The party opposing arbitration has the burden to demonstrate "that congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. . . . [S]uch an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 481 U.S. at 227 (citations omitted).

"The starting point in any case involving statutory construction is the language of the statute itself. When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances." *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1460 (1997) (internal citations and quotations omitted). However, this principle must be read in conjunction with the Supreme Court's instruction that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]" *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). This canon of construction, "however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of congress." *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986).

Defendants assert that the plain language of the Recovery Act does not displace federal law and that its legislative history does not reflect any intent to displace the FAA. Docket No. 34, pp. 29-30. Conversely, Plaintiff maintains that the Recovery Act displaces the FAA because the it provides that "an Indian tribe . . . may enforce the right of recovery . . . by instituting a separate civil action, including a civil action for injunctive relief[,]" and such language demonstrates Congressional intent to allow Tribal Nations to proceed in court and not arbitration. Docket No. 43, p. 29. The undersigned Magistrate Judge finds, however, that this language alone does not evince a congressional command overriding the FAA. *See CompuCredit Corp.*, 565 U.S. at 103-04 ("[W]e have repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 640 (1985) (enforcing an arbitration agreement despite a provision of the Clayton Act providing, "[A]ny person . . . may sue therefor in any district court of the United States[.]"). Moreover, Plaintiff has not pointed to any discussion of arbitration in the Recovery Act's legislative history, and the plain language of the statute mentions neither federal law nor arbitration. *See* 25 U.S.C. § 1621e. Therefore, it is not clear Congress intended the Recovery Act to displace the FAA, and the delegation clause at issue here must be enforced. *See Epic Systems Corp. v. Lewis*, 584 U.S. 497, 516 (2018) ("In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes. In fact, this Court has rejected *every* such effort to date (save one temporary exception since overruled), with statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act, the Credit

Repair Organizations Act, the Securities Act of 1993, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act. . . . . And we've stressed that the absence of any specific statutory discussion of arbitration or of class actions is an important and telling clue that Congress has not displaced the Arbitration Act.") (emphasis in original) (internal citations omitted).

Finally, to the extent Plaintiff contends the delegation clause prevents the effective vindication of their claims, such argument is without merit. The "effective vindication" exception to the FAA invalidates arbitration agreements that "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies[.]" *Mitsubishi*, 473 U.S. at 637, n. 19. But, "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637; *see American Exp. Co.*, 570 U.S. at 236. Plaintiff does not explain how the *delegation clause* eliminates its right to pursue its claims under the Recovery Act and, although it may be cost-prohibitive, "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* (emphasis in original).

The undersigned Magistrate Judge therefore finds Plaintiff's challenges to the relevant arbitration provision in this case must be decided by the arbitrator and not this Court. Accordingly, the undersigned Magistrate Judge recommends that Defendants' Motion be granted, and this action stayed pending the outcome of any arbitration proceedings. However, "[i]t is well settled that the district court has the power . . . to control its docket for the purposes of economy of time and effort for itself, for counsel, and for litigations."

*Baca v. Berry*, 806 F.3d 1262, 1269-70 (10th Cir. 2015) (quoting *Pet Milk Co. v. Ritter*, 323 F.3d 586, 588 (10th Cir. 1963)). Pursuant to this authority, the undersigned Magistrate Judge further recommends that this case be reopened, within twenty-one (21) days from the adoption of this Report and Recommendation, if neither side commences an arbitration proceeding within such time frame.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that the UnitedHealth/Optum Defendants' Motion to Stay Proceedings Pending Arbitration Pursuant to Section 3 of the Federal Arbitration Act [Docket No. 34] be GRANTED and this action be STAYED and administratively closed pending the outcome of any arbitration proceedings. The undersigned Magistrate Judge further RECOMMENDS that, if neither party commences arbitration proceedings within twenty-one (21) days of this Court's adoption of this Report and Recommendation, this case should be reopened and proceedings resumed to further the Court's control of its docket. Any objections to this Report and Recommendation must be filed within fourteen days, or by May 22nd, 2024. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 8th day of May, 2024.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**